No. 14785

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

TOBACCO RIVER LUMBER COMPANY, INC.,
a Montana corporation,

Plaintiff and Appellant,

vs.

LOUIS A. YOPPE et al.,

Defendants and Respondents.

_____

Appeal from: District Court of the Nineteenth Judicial District,
Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

For Appellant:

Robert S. Keller argued, Kalispell, Montana

For Respondents:

Fennessy, Crocker, Harman & Bostock, Libby, Montana
Thomas R. Bostock argued, Libby, Montana

_____

Submitted: November 1, 1979

Decided: NOV 8 1979

Filed:

_____
Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff Tobacco River Lumber Company, Inc., filed an action against defendants Yoppe alleging in Count I an action for damages for a delay in deeding real property to plaintiff, and alleging in Count II an action for damages for the cost of a survey with respect to the property referred to in the contract for deed. The matter was tried before a jury in December 1978 in the District Court of the Nineteenth Judicial District of the State of Montana, in and for the County of Lincoln. The jury awarded no damages for the delay in Count I and one-half of the survey costs in Count II. Plaintiff thereafter moved for a new trial as to both counts, but the court denied the motion. Plaintiff appeals from the final judgment and orders denying the motion for a new trial.

Plaintiff-appellant, a Montana corporation primarily engaged in the wood products industry, negotiated with defendants-respondents for the purchase of an irregularly shaped tract of land of approximately 400 acres situated near Eureka, Montana. These negotiations resulted in the execution of a contract for deed dated June 1, 1966.

The purchase price was paid on or about January 31, 1972. According to the terms of the contract for deed, the Yoppes were to provide Tobacco River with a warranty deed conveying title to the property and a policy of title insurance at the time of the last payment or within a reasonable time thereafter, such period not to exceed 60 days. The Yoppes provided Tobacco River with a warranty deed on May 14, 1974, and title insurance on June 6, 1974.

At the time of the final payment, the Yoppes requested their attorney, Joseph F. Fennessy, Jr., of Libby, Montana, to prepare a deed and obtain title insurance. The legal description in the contract for deed was compiled from various tax notices and did not give a sufficient legal description. The title company, therefore, requested a survey. The Yoppes took steps to arrange for a survey in April 1973 when Mrs. Yoppe contacted a surveyor from Missoula who agreed to do a boundary survey for her.

By this time Tobacco River had constructed homes on the premises and desired to have an interior survey of the various tracts involved. Tobacco River contacted the same surveyor for an interior survey, with a request, and an agreement, that the survey would be completed before July 1, 1973, when the new Montana Subdivision and Platting Act would take effect. In mid-June, however, the Missoula surveyor informed the parties that he had not been able to get to the survey because of the press of business and would not be able to before July 1, 1973. The president of Tobacco River then obtained the services of a surveyor from Billings who proceeded with dispatch to do the boundary survey and the interior survey and finished the surveys in September 1973. He submitted a bill for the interior survey, which was paid by Tobacco River, and he submitted a bill for the exterior survey, which was not paid by the Yoppes or anyone else. Because of the failure to pay, the exterior survey was not filed by the surveyor, and no deed could be delivered.

In May 1974, the Yoppes' attorney prepared a deed from tax notices, the Lincoln County tract book, and other papers, which provided for 379 acres, more or less. This was possible as section 11-614, R.C.M. 1947, had been repealed.

The deed was recorded on May 14, 1974. At the same time, the title company issued a policy of title insurance effective May 14, 1974, using the legal description prepared by the Billings surveyor and contained in the unfiled survey, reflecting 357.77 acres. The policy of title insurance was delivered to Tobacco River on June 6, 1974. There is no evidence that the boundary survey was ever filed.

Three major areas of conflict exist between the parties regarding the details of the survey and the circumstances under which it was conducted. First, with respect to the area of land to be surveyed, appellant insists that respondents requested a survey of the entire parcel of land. Respondents, however, contend that they requested a survey of only a particular problem area of the land, the meander line of the Tobacco River, and that appellant requested a survey of the remainder. Second, with respect to the circumstances under which the survey was conducted, respondents insist that the surveyor gave appellant an estimate regarding the costs of the survey before contacting respondents. Appellant alleges that respondents were furnished an estimate of the costs after the surveyor had contacted the respondents. Finally, appellant alleges and respondents deny that respondents had knowledge of a survey conducted by a second surveyor hired by appellant.

The estimate given by the original surveyor was $2,000 for the boundary survey. The survey bill in question totaled $4,323.63 for the exterior survey.

Counsel for both parties agreed that the claim for damages in Count I would consist solely of the interest on the purchase price for two and one-half years.

-4-

The issues presented to this Court on appeal are:

1. Was the verdict of the jury as to Counts I and II supported by substantial evidence and the law of the case?

2. Did the District Court err in failing to grant plaintiff's motion for a directed verdict as to Counts I and II?

3. Did the District Court err in refusing plaintiff's proposed Instruction No. 15 and in giving Instruction No. 14?

There are pages upon pages of charges and counter-charges made in the briefs which would compel a much longer opinion than is warranted by the law and facts involved here if we were to dignify most of them with extended discussion.

Aside from the fact that respondents are responsible, under the contract, to furnish title and insurance which could not be accomplished without a survey, the court gave to the jury Instruction No. 13:

> "You are instructed that the laws which exist at the time and place of making of a contract, and where it is to be performed, enter into and form part of it, as if they were expressly referred to or incorporated in its terms."

This was followed by the controversial Instruction No. 14, which is confusing but is the statute, section 11-614, R.C.M. 1947, and states the law in existence at the time of the making and original performance date of this contract. In part it simply states:

> "Any person who desires to . . . sell or transfer any irregularly shaped tract of land, the acreage which cannot be determined without a survey, must cause the same to be surveyed, platted, certified, and filed in the office of the county clerk and recorder of the county in which said land lies, . . . before any part or portion of the same is sold or transferred; . . . It is unlawful for any further sales to be made without full compliance with the provisions of this chapter, and the surveying and platting of the whole tract . . ."
> (Emphasis added.)

-5-

The statute goes on and states that the county clerk and recorder shall not record any deed which purports to convey any irregularly shaped tract unless the Act has been complied with.

Instruction No. 16 leaves little doubt as to the responsibility of the parties:

> "You are instructed that the contract provided
> that Defendants Yoppe would furnish a policy of
> title insurance; if you find that they could not
> get a policy of title insurance without a survey,
> then you must find that they are liable for the
> reasonable cost of such survey."

The parties agree that the parcel of land is irregular. Section 11-614, R.C.M. 1947, in force at the time, does apply to this kind of a land transfer, i.e., irregular and unable to compute acreage without a survey. The court, by its own instruction and the evidence in the record, should have granted a directed verdict on Count I as a matter of law. Failure to do so is reversible error. The jury verdict on Count I was rendered contrary to the evidence and the law of the case.

Regarding Count II, there is just no substantial credible evidence to support a "split" of the fee due the second surveyor in equal parts as was done by this jury. No surveyor or any other witness testified as to any division. Attorney Joe Fennessy testified that the parties had agreed to split the fee. There was testimony as to estimates and actual costs, but that was all. Additionally, the court instructed the jury on the law of the case as follows:

> "You are instructed that contract damages must
> be clearly ascertainable in both their nature
> and origin; damages which are not clearly as-
> certainable, or which are a matter of mere
> speculation cannot be the basis of recovery.
> As applied to this case, the damages alleged
> by Plaintiff must be clearly ascertainable,
> the offsets claimed by Defendants must also

-6-

be clearly ascertainable, and the burden is upon each party to so prove, in accordance with these instructions."

This instruction applies with equal force to the argument of failure to mitigate damages by respondents against the appellant. There was no substantial credible evidence on this point. The value of the claimed offer of a portion of the land was lacking. No evidence of a formal tender to appellant was ever shown. There was no authority to support the proposition that under section 11-614, R.C.M. 1947, a portion of an irregular tract could in fact be offered or that appellant could be compelled to accept less than its contract bargain or be penalized for failure to mitigate damages.

The holdings of this Court on other issues do not warrant a discussion of Instruction No. 15 and the proposed Instruction No. 14. We would comment, however, that while quoting a statute verbatim may recite the applicable law, often times this practice causes confusion. In cases where multiple problems or circumstances are within the same statute, or a statute is badly drawn, it is far better to develop your own instruction. In a close circumstance it could be error to use the statute, if for no other reason than that it has misled the jury.

The judgment of the District Court is reversed with instructions to enter judgment for appellant on Count I as a matter of law. Count II is remanded for a new trial.

_____
Justice

-7-

We concur:

_____
Chief Justice

_____

_____

_____
Justices